UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

In Re                                    )
                                         )   Case No.     25-30549
ERIC J. FRIERDICH,                       )
                                         )   Chapter 7
            Debtor.                      )
                                         )
_____  )
                                         )
KAPITUS SERVICING, INC.,                 )
                                         )
            Plaintiff,                    )
      v.                                 )   Adv. No.    25-03024
                                         )
ERIC J. FRIERDICH,                       )
                                         )
            Defendant.                    )

---

## O P I N I O N

Before the Court is the Defendant's Motion to Dismiss Plaintiff's Complaint to Determine Dischargeability of Debt and for Other Relief. For the reasons set forth herein, the Motion to Dismiss will be granted, in part.

### I.      Factual Background

Eric J. Frierdich ("Debtor") filed his voluntary Chapter 7 petition on July 23, 2025. Donald Samson was appointed the case trustee and conducted several creditors meetings with the final meeting occurring on October 15, 2025. The Debtor received his discharge on December 4, 2025. The trustee has filed a report of no distribution stating that he has found no property available for distribution to creditors.

-1-

Relevant to the issues here, the Debtor scheduled Kapitus Servicing, Inc. ("Kapitus") as an unsecured creditor in the amount of $92,333.25. After obtaining an extension of time, Kapitus filed this adversary complaint seeking to except the debt owed to it from the Debtor's discharge. In its complaint, Kapitus alleges that the Debtor is the sole owner of Midwest Carpet and Duct Cleaning, Inc., d/b/a Midwest Duct Cleaning ("Midwest"). It further alleges that, in October 2022, it lent $88,800 to Midwest, that the Debtor guaranteed the obligation of Midwest to repay the loan, and that the loan was secured by an interest in all of Midwest's property including its business receipts. It further alleges that Midwest and the Debtor defaulted on the loan. Specifically, Kapitus alleges that, within a month of the loan being made, the Debtor violated loan covenants by obtaining additional funding for Midwest and by using multiple bank accounts rather than the one account required by the covenants. Kapitus says that it filed a complaint in Virginia state court against the Debtor and Midwest and, in 2023, obtained a default judgment against both the Debtor and Midwest in the amount of $134,570.62.

In its complaint, Kapitus alleges in Count I false representations, fraudulent transfers, and actual fraud, relying on the breaches of loan covenants by Midwest and the Debtor. Kapitus says that the Debtor made false representations in the loan documents and never intended to have Midwest repay the loan. Count II of the complaint alleges the making of false statements in writing about the Debtor's and Midwest's financial condition. Again, Kapitus relies on the loan covenants and says that the Debtor never intended for the loan

to be paid. Count III of the complaint alleges embezzlement by suggesting that the Debtor's transfer of funds, including loan proceeds from one Midwest account to another was wrongful. Count IV of the complaint alleges willful and malicious conduct by the Debtor, again relying on the representations made in the loan documents and the alleged breach of loan covenants. Kapitus requests the entry of a judgment as to all counts holding that the previously-entered money judgment from Virginia plus additional interest, fees, and costs be excepted from the Debtor's discharge.[1]

The Debtor responded to the complaint by filing a Motion to Dismiss and accompanying memorandum of law (collectively "Motion to Dismiss") asserting that Kapitus had failed to state claims upon which relief can be granted. The Motion to Dismiss asserts that the money judgment obtained in Virginia can have no collateral estoppel effect in this case because it was a default judgment and Illinois law, which he says is controlling, would limit its use. Further, he says the judgment does not include the types of specific findings necessary to provide meaningful issue preclusion.

The Debtor's Motion to Dismiss also addresses each count of the complaint. As to Count I, the Debtor says that Kapitus has pleaded no more than a breach of contract claim. Many of the representations made by the Debtor related to future conduct, and facts were not pleaded to support an inference

---

[1] In a response brief, Kapitus asks not only that the debt be declared nondischargeble but that the Debtor be collaterally estopped from claiming that the debt is dischargeable. Kapitus wants the judgment to be used to preclude the raising of any issues or defenses by the Debtor in this proceeding. The collateral estoppel issues will be discussed briefly below. But it is important to note at this point that the collateral estoppel claim is not even raised by Kapitus as to Count I of the complaint. Information about the Virginia judgment is set forth at paragraphs 43 through 45 of the general allegations of the complaint. Count I incorporates only paragraphs 1 through 39 of the general allegations.

that the Debtor never intended to comply with the promises related to the future. With respect to Count II, the Debtor says that none of the alleged misrepresentations related to the Debtor's or Midwest's financial condition or any component of either of their financial conditions. The Debtor asserts that a promise to act in the future by itself is not a representation regarding financial condition. As to Count III, the Debtor says no allegations are made that the fund transfers complained of were for the benefit of anyone other than Midwest. In his reply brief, the Debtor also says that Kapitus had no ownership interest in the funds and that, in any event, a person or entity cannot embezzle from itself. Finally, with respect to Count IV, the Debtor complains that Kapitus repeatedly uses the terms "willful and malicious" but fails to plead any facts to support a finding that the Debtor's conduct was both willful and malicious. No facts were pleaded by Kapitus to support a claim that the Debtor intended to injure Kapitus.

The Motion to Dismiss has now been fully briefed by the parties. This Court has reviewed and considered the parties' arguments and relevant case law, and the matter is ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Determinations as to the dischargeability of particular debts are core

proceedings. 28 U.S.C. §157(b)(2)(I). The issues here arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.   Legal Analysis

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint need only allege enough factual allegations to plausibly suggest a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. That is, a complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). *Twombly* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While detailed specifics may not be required, there must be some facts alleged to support each element of the cause of action. *Iqbal*, 556 U.S. at 678-79; *see also Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098-99 (7th Cir.

2015). Fraud must be pleaded with specificity.  Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

"A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Iqbal*, 556 U.S. at 678; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012). Those well-pleaded facts, however, must "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679.

In discussing the pleading standards, the Debtor raised the issue of whether collateral estoppel would apply here. The Debtor claimed that it would not because the Virginia judgment that Kapitus obtained against him was entered by default and Illinois law, which he claims should apply, does not give collateral estoppel effect to default judgments. Kapitus responded by asserting that, under Virginia law that it claims should apply, default judgments may support collateral estoppel. At this point, the discussion of collateral estoppel is largely premature. Kapitus may not rely on collateral estoppel to avoid pleading all required elements of each asserted claim. Nothing in the standards set forth above provides for a deviation from the requirements because the Debtor might be precluded from relitigating an issue here. A key element of collateral estoppel is that the issues decided in the prior case must be identical to issues presented

for adjudication in the subsequent case. *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (citations omitted). The analysis of whether identical issues are presented here cannot be made until well-pleaded claims have been made. Because the complaint will be dismissed in large measure, the extent of any collateral estoppel effect cannot be determined until an amended complaint that can survive a motion to dismiss is on file.

Each of the four counts will be analyzed under the pleading standards set forth above.

### A. Count I – 11 U.S.C. § 523(a)(2)(A)

Kapitus asserts in Count I that the debt owed to it by the Debtor should be excepted from discharge because the debt was obtained by "false pretenses, a false representation, or actual fraud" relating to statements respecting matters other than the Debtor's financial condition. 11 U.S.C. §523(a)(2)(A). The facts as pleaded attempt to state claims for both false representations and actual fraud, distinct causes of action that will be discussed separately.

To state a claim for false representations, a plaintiff must allege (1) a false representation or omission made by the debtor; (2) that the debtor knew was false or made with reckless disregard for the truth; (3) that the debtor made with the intent to deceive; (4) and upon which the creditor justifiably relied. *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *accord Iqbal*, 556 U.S. at 678-79, and *Olson*, 784 F.3d at 1098-99 (plaintiff must allege some facts to support each element of cause of action). Generally, allegations of mere breaches of

contractual promises do not satisfy the pleading requirements. *In re Davis*, 638 F.3d 549, 554 (7th Cir. 2011). Making a promise that one does not intend to keep, however, is fraud, and plausible allegations of a debtor entering into a contract with no intention of performance may state a claim. *Id.*; *Holtz v. JPMorgan Chase Bank*, 846 F.3d 928, 932 (7th Cir. 2017); *AmeriCash Loans, LLC v. Marquardt (In re Marquardt)*, 561 B.R. 715, 725 (Bankr. C.D. Ill. 2016); *Shelby Shore Drugs, Inc. v. Sielschott (In re Sielschott)*, 332 B.R. 570, 572 (Bankr. C.D. Ill. 2005) (Lessen, J.).

False representations involve fraud, and, as set forth above, fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Allegations made "upon information and belief" do not ordinarily satisfy that standard; such allegations may only suffice when the underlying facts are inaccessible to the plaintiff, and the plaintiff pleads the grounds for suspicion. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011); *Grochocinski v. Campbell (In re Campbell)*, 475 B.R. 622, 639 n.12 (Bankr. N.D. Ill. 2012).

Kapitus' allegations regarding false representations are made principally in the general allegations section of the complaint and at paragraph 55 of Count I. Kapitus says that the Debtor misrepresented Midwest's financial condition and misrepresented that Midwest would not enter into additional financing agreements, would deposit all receipts into a designated account, and would ensure that sufficient funds remained in the designated account so that Kapitus could withdraw its payments as they became due. Throughout Count I, Kapitus

alleges "on information and belief" that the Debtor knew his promises on behalf of Midwest were false and that he never intended to honor the promises.

Kapitus' claim that the Debtor misrepresented Midwest's financial condition cannot be considered in analyzing Count I. Misrepresentations regarding Midwest's financial condition are not actionable under §523(a)(2)(A); they are only actionable under §523(a)(2)(B). *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018); *Schiller DuCanto & Fleck, LLP v. Potter (In re Potter)*, 616 B.R. 745, 751-52 (Bankr. N.D. Ill. 2020).

The other misrepresentations alleged to have been made by the Debtor all relate to promises of future conduct. Allegations that promises were not kept, without more, do not support a fraud or misrepresentation claim; they support no more than a dischargeable breach of contract claim. *Davis*, 638 F.3d at 554. Generally, false representations must "relate to a 'present or past fact,' not future facts or future conduct." *Potter,* 616 B.R. at 752 (quoting *Groom v. Krook (In re Krook)*, 615 B.R. 479, 485 (Bankr. N.D. Ill. 2020)) (internal quotation marks omitted). But Kapitus asserts that the close proximity in time from when the promises were made to when the defaults began adds enough to the allegations to state a plausible false representation claim. Kapitus' allegations against the Debtor are bare bones, made largely on "information and belief," and are supported only by limited facts. However, the allegations are enough—just barely enough—to get past the pleading stage. To be clear, the allegations will have to be supplemented by more evidence to meet Kapitus' burden of proof at trial. The Debtor's stated defense regarding the number of payments made on the debt

before the final default, although not considered at this stage, could well be enough to defeat Kapitus' claim at trial. For now, however, Count I will not be dismissed to the extent it attempts to state a claim for false representations.

Kapitus also attempts to state a claim for actual fraud in Count I. Actual fraud encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (citations omitted). To state a claim for actual fraud, Kapitus must plead facts to plausibly allege (1) that a fraud occurred; (2) that the debtor intended to defraud, and (3) that the fraud created the debt at issue. *Id.* Actual fraud must be pleaded with Rule 9(b) particularity.

In attempting to state a claim for actual fraud, Kapitus relies on two different theories. First, Kapitus makes a claim in the nature of fraudulent inducement. This theory adds little to the complaint as it relies on the same allegations and, ultimately, will rely on the same proofs already discussed. But, as with the false representation claim, it presents just enough to state a plausible claim and will not be dismissed. Second, Kapitus presents an actual fraud claim relying on allegations of fraudulent transfers. Kapitus falls well short on that theory.

Kapitus labeled Count I as brought, in part, as a fraudulent transfer claim and, at paragraph 57, alleges that the transfers made from the account designated for payment of Kapitus were fraudulent. Kapitus says that the Debtor transferred funds to "other accounts" but does not describe those other

accounts.[2] The only inference to be drawn from such limited allegations is that the alleged transfers were made to other accounts held in the name of Midwest. Therein lies the problem for Kapitus.

As used here, the term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. §101(54)(D). If the alleged transfers did not involve Midwest actually disposing of or parting with property—and the allegations suggest that they did not—then there were no "transfers" and no action based on fraudulent transfers can be plausibly stated.

Additionally, Kapitus overlooks the fact that §523(a)(2)(A) excepts from discharge debts obtained by or incurred by actual fraud. Here, the Debtor's liability, as pleaded by Kapitus, arose when he signed the guaranty at the beginning of the loan transaction. He did not incur any further debts or liabilities by making the so-called transfers. And, as set forth above, no facts are pleaded to support a claim that he was the personal recipient of the so-called transfers.

No other allegations in Count I expound on the fraudulent transfer theory in any meaningful way. The allegations are mainly just labels and conclusions that controlling case law warns is not enough. *Twombly*, 550 U.S. at 555. Kapitus makes no plausible claim that any "transfer" occurred—fraudulent or

---

[2] In its response to the Motion to Dismiss, Kapitus alleges that the Debtor "drained the agreed-upon Account and transferred the funds for his own use." But unsupported allegations in the response that were not included in the original complaint do not remedy the defective complaint. Such allegations only serve to highlight the problem with the original complaint. *Legacy Constr. Servs., LLC v. Segobiano (In re Segobiano)*, 2026 WL 117102, at *2 n.1 (Bankr. C.D. Ill. Jan. 15, 2026). Further, at Count IV, paragraph 94 (unnumbered bullet point 4), Kapitus specifically pleads that the funds were transferred to "other operating accounts." The Count IV allegations are not incorporated in Count I, but the contradiction cannot be ignored.

otherwise. Absent more—much more—Count I does not come close to stating a claim for actual fraud based on a fraudulent transfer scheme. Count I, to the extent it attempts to plead a claim for actual fraud based on fraudulent transfers, will be dismissed.

### B. Count II – 11 U.S.C. § 523(a)(2)(B)

In Count II, Kapitus seeks to except its debt from the Debtor's discharge because it claims that debt was incurred by the use of a statement in writing regarding the Debtor's or an insider's financial condition that was materially false. 11 U.S.C §523(a)(2)(B). The specific elements of the cause of action require pleading, and ultimately proving, that "(1) the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's [or an insider's] financial condition; (4) in making the statement, the debtor had an intent to deceive the creditor; and (5) the creditor actually and reasonably relied upon the statement." *Webster Bank v. Contos (In re Contos)*, 417 B.R. 557, 563 (Bankr. N.D. Ill. 2009) (citing *Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 507 F.3d 610, 613 (7th Cir. 2007), and *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995)). False representations made with the intent to deceive involve fraud and must be pleaded with particularity. Fed. R. Civ. P. 9(b); Fed R. Bankr. P. 7009.

One threshold issue in analyzing §523(a)(2)(B) claims is whether the alleged false statements are "respecting the debtor's or an insider's financial condition." The Supreme Court has construed the phrase to encompass

statements that have "a direct relation to or impact on the debtor's overall financial status[,]" including statements about a single asset. *Appling*, 584 U.S. at 720. Thus, statements about a debtor's income, expenses, assets, or liabilities are statements respecting the debtor's financial condition. *Potter*, 616 B.R. at 752 (citations omitted). But statements of mere intention such as a promise to pay are not about a debtor's financial condition; they are simply statements of intention. *Id.*

A second, related threshold issue is whether the writing in question is sufficiently substantive to be considered a "statement respecting financial condition" as required by the statute. "A financial statement is materially false if it paints a substantially untruthful picture by misrepresenting information that would ordinarily affect the decision to grant credit, or if the lender would not have made the loan 'but for' the debtor's misrepresentations." *Bank of Rantoul v. Adcock (In re Adcock)*, 618 B.R. 260, 264-65 (Bankr. C.D. Ill. 2020) (Perkins, J.) (citing *In re Morris*, 230 B.R. 352 (Bankr. N.D. Ill. 1999), *aff'd*, 223 F.3d 548 (7th Cir. 2000)). Some courts have held that actual financial statements and documents such as balance sheets, income statements, tax returns, and bank statements are distinguishable from boilerplate transactional warranties that recite legal conclusions but provide or contain no underlying financial information. *See, e.g.*, *BBI Architectural Servs. v. Janney (In re Janney)*, 557 B.R. 476, 482 (Bankr. M.D. La. 2016) ("transactional documents that merely imply some financial status" not "statements regarding the debtor's financial condition"); *Caruso v. Segal (In re Segal)*, 195 B.R. 325, 332 (Bankr. E.D. Pa.

1996) (lease and note documents "not, by any stretch of the imagination, classifiable as financial statements"). Because *Appling* expanded the definition of what statements are now included as "respecting" a debtor's "financial condition," the range of documents that might be relied on by a creditor to judge a debtor's financial condition has likely also expanded. Individual pay stubs, bills or invoices, and similar documents that provide information about only one aspect of a debtor's financial condition can now be considered. Nevertheless, the concern about boilerplate language being relied on without any underlying financial information being provided or reviewed remains valid.

In Count II, Kapitus repeats some of the same alleged misrepresentations set forth in Count I, including the Debtor's promise to use only the designated account for depositing receipts and to not enter into further loan transactions without Kapitus' permission. Those promises are not respecting the Debtor's or Midwest's financial condition; they are simply statements of intent and are not actionable under §523(a)(2)(B). *Potter*, 616 B.R. at 752.

Kapitus also alleges in Count II that the Debtor made material misrepresentations about the financial condition of Midwest and himself by stating that both he and Midwest were solvent and were not planning to file bankruptcy. Further, Kapitus alleges that the Debtor provided false financial information and failed to disclose that Midwest was "low on funds" at the time of the loan transaction. None of the allegations are supported by sufficient facts to state plausible claims, but each will be briefly discussed.

Although Kapitus says that the Debtor's representations of solvency are misrepresentations, Kapitus makes no affirmative claim that either the Debtor or Midwest was insolvent when the loan was made. Further, Kapitus pleaded no facts to support a finding of insolvency as to either the Debtor or Midwest at that time. "Insolvency" is not defined in the loan documents but generally means, in common parlance, that an individual or entity is "unable to pay debts as they fall due in the usual course of business" or has "liabilities in excess of a reasonable market value of assets held." *Insolvent*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/insolvent (last visited July 16, 2026). No facts are pleaded that suggest either definition of insolvency would apply to the Debtor's or Midwest's financial condition at the time the loan was made. Kapitus simply placed the label and conclusion of misrepresentation on the Debtor's statement of solvency and then failed to plead any facts to back up that allegation. It has not stated a plausible claim that the Debtor's representations of solvency are actionable under §523(a)(2)(B).

Likewise, Kapitus has failed to plead sufficient facts to state a plausible claim related to the representation that neither the Debtor nor Midwest intended to file bankruptcy. The representation is likely not one respecting their financial condition but rather just a statement of intent. To the extent, however, that it was a representation of financial condition, no facts were pleaded to support a claim that it was a misrepresentation. Midwest has not filed bankruptcy; the representation that it was not going to file bankruptcy was therefore apparently

true and not a misrepresentation. The Debtor filed his bankruptcy case in July 2025—more than two and a half years after the loan documents were signed in October 2022. In Count I, Kapitus' allegation relating to the close proximity of the loan transaction and the initial defaults was deemed to be sufficient to state a plausible claim of misrepresentation at the inception of the loan. But a two-and-a-half-year gap between the representation that he did not intend to file bankruptcy and the Debtor's actual bankruptcy filing is far too long to permit the drawing of any inferences that the Debtor intended to file bankruptcy when he signed the loan documents. Fraud must be pleaded with particularity and, without any facts pleaded to support the allegation that the "no bankruptcy" representation was false at the time made, the allegation is insufficient to state a plausible claim.

Finally, Kapitus says that the Debtor provided false financial information. In the general allegations rather than in Count II, Kapitus says that the Debtor submitted financial documents to it but only specifically identifies bank statements as having been provided. Kapitus does not allege that the bank statements it received were altered in any way and makes no claim that the bank statements contained false financial information. Instead, Kapitus alleges in Count II that Midwest was "low on funds" at the time the loan was made and that the Debtor failed to notify Kapitus of that fact.

"Low on funds" is a vague statement that does not plead falsity and fraud with the specificity required. Kapitus says that it would not have made the loan if it knew that Midwest was low on funds. But that makes little sense.

Essentially, Kapitus is saying that it would not have made the loan if it knew that Midwest needed the loan funds. Solvent, profitable businesses can have cash flow issues from time to time and often resolve those issues by taking loans. The fact that Midwest needed the loan proceeds can hardly be considered a misrepresentation.

More importantly, Kapitus points to no written statement where the omission of the "low on funds" information was made. Misrepresentations by omission brought under §523(a)(2)(B) must be in writing and usually occur when a borrower provides written financial information but fails to make full disclosure of information specifically requested. *See, e.g.*, *New Century Bank v. Carmell (In re Carmell)*, 424 B.R. 401, 415-16 (Bankr N.D. Ill. 2010); *Union Planters Bank v. Martin (In re Martin)*, 299 B.R. 234, 240-41 (Bankr. C.D. Ill. 2003) (Lessen, J.). Kapitus said it received financial information but does not identify any document where the amount of funds on hand at Midwest at the time of the loan transaction should have been disclosed but was omitted or misrepresented. Kapitus obtained bank records but does not say they were false. Without pleading any facts of how, when, or where the misrepresentation by omission was made, Count II does not state a plausible claim for providing false financial condition information by omission. Count II will be dismissed.

### C.  Count III - 11 U.S.C. § 523(a)(4)

Debts for "fraud or defalcation in a fiduciary capacity, embezzlement or larceny" may be excepted from a debtor's discharge. 11 U.S.C. §523(a)(4).

Kapitus alleges that the Debtor embezzled funds due to it and that his debt should be excepted from discharge on that basis. "Embezzlement" has been defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Matter of Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895)), *abrogated on other grounds by, Grogan v. Garner*, 498 U.S. 279, 291 (1991). The required elements of an exception to discharge for embezzlement include that the Debtor appropriated funds for his own benefit and did so with fraudulent intent or deceit. *Id.*

Kapitus bases its claim of embezzlement on allegations that the Debtor moved funds from a Midwest account designated for payments to Kapitus to other accounts that Kapitus could not access. Kapitus also alleges that the Debtor failed to deposit receipts into the designated account in violation of the loan agreement. The Debtor says that the allegations of Count III are insufficient because nothing is pleaded to support the claim that the Debtor appropriated the funds for his own use. In his reply brief, the Debtor also raises the issue of whether Kapitus had an ownership interest in the funds.

That the Debtor misappropriated the funds for his own use is, without question, an element of the cause of action sought to be pleaded; Kapitus admits as much in its response. Kapitus says, however, that it need not allege how the funds were used by the Debtor and that the general allegation of misappropriation is sufficient. Kapitus relies on *Krook* for its argument that it does not need to plead specifics of what happened to the funds. *Krook*, 615 B.R.

at 486. But *Krook* involved a debtor who sold a vehicle to a buyer that the debtor did not own and had no right to sell. After taking the money from the buyer, the debtor did not deliver the vehicle. Those factual allegations were deemed sufficient to state a cause of action because the benefit to the debtor was obvious. Here, no such obvious personal benefit to the Debtor can be inferred from the facts pleaded. As stated above, the facts as pleaded suggest that the funds went from one Midwest account to another Midwest account. The funds may not have gone where the loan agreement required them to go, but that does not mean that the Debtor appropriated the funds for his personal use. *Krook* is clearly distinguishable. Kapitus has pleaded no facts that support its claim that the Debtor took Midwest funds for his personal use and therefore has not stated a claim for embezzlement.

The Debtor says in his reply brief that Count III fails because Kapitus has no ownership interest in the loaned funds. Rather, the loan funds and the ongoing receipts of Midwest were owned by Midwest. Although Kapitus has not had an opportunity to respond to this argument, it will be addressed. The dismissal of Count III will be without prejudice, and discussing this issue now may assist Kapitus if it chooses to replead.

As this Court has previously held, "[o]ne cannot embezzle one's own property." *Cripe v. Mathis (In re Mathis)*, 360 B.R. 662, 668 (Bankr. C.D. Ill. 2006) (quoting *Gadtke v. Bren (In re Bren)*, 284 B.R. 681, 698 (Bankr. D. Minn. 2002)). Because collateral is generally owned by the borrower and the lender has only a security interest or lien on the collateral, the lender's interest "does not rise to a

level of ownership sufficient to support a claim for embezzlement for purposes of Section 523(a)(4)[.]" *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010). The view that a lender's interest in collateral will generally not support a claim of ownership sufficient to state a claim for embezzlement is the majority view. *See, e.g., Oak Street Funding LLC v. Brown (In re Brown)*, 399 B.R. 44, 47-48 (Bankr. N.D. Ind. 2008) (misappropriation and use of collateral for purpose other than repayment may be breach of contract or conversion but not larceny or embezzlement); *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006) (lender who takes security interest in the vehicle "does not have any ownership interest in the vehicle which will sustain either an action for larceny or an action for embezzlement"); *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 510 (Bankr. N.D. Ill. 2002) (secured party "possesses only a lien, and is not in ownership or possession of the property"); *Deere & Co. v. Contella (In re Contella)*, 166 B.R. 26, 30 (Bankr. W.D.N.Y. 1994) ("As owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself.").

A minority line of cases exists, allowing creditors to enforce their interest in collateral through embezzlement claims. *See, e.g., Jones v. Hall (In re Hall)*, 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003) (collecting cases). This Court finds the minority position unpersuasive. But as stated above, Kapitus will be granted

leave to amend, and if there is more that can be pleaded to support its claim of embezzlement, it will have an opportunity to do so. Count III will be dismissed.

*D. Count IV – 11 U.S.C. § 523(a)(6)*

Count IV seeks to have the debt owed to Kapitus by the Debtor excepted from discharge because it claims the debt arose from willful and malicious injury to its property. 11 U.S.C. §523(a)(6). To prevail, Kapitus must plausibly allege and ultimately prove (1) an injury caused by the Debtor; (2) willfulness; and (3) malice. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). An injury is a "violation of another's legal right, for which the law provides a remedy." *Id.* "Willful" modifies "injury," not "act," and the provision reaches "only acts done with the actual intent to cause injury" and not intentional acts that happen to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). To be willful, both the act and the resulting injury must be intended. *Id.* at 61-62. Malice means conduct undertaken "without just cause or excuse or in conscious disregard of one's duties." *Horsfall*, 738 F.3d at 775 (citing and reaffirming *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)).

Allegations of ordinary breaches of contract generally are not sufficient to support a claim under §523(a)(6). A breach, even a knowing or intentional breach, does not by itself give rise to a willful and malicious injury; the conduct must be tortious. *Geiger*, 523 U.S. at 61-62; *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011). Considering breaches of contract as willful and malicious injuries would conflict

with the authority under the Code to reject burdensome contracts; it would be unfair to except a debt from discharge because a debtor took an action pre-petition that is specifically allowed under the Code to be taken post-petition. *Wish Acquisition, LLC v. Salvino (In re Salvino),* 373 B.R. 578, 588-91 (Bankr. N.D. Ill. 2007); 11 U.S.C. §365. Further, most debtors know that nonpayment will injure a creditor, but simple nonpayment is not and cannot be the standard for determining willful and malicious conduct. If it was, many traditionally dischargeable debts would be swept into the nondischargeable category. *Wish Acquisition,* 373 B.R. at 588-91; *Taylor v. Snyder (In re Snyder),* 542 B.R. 429, 443-44 (Bankr. N.D. Ill. 2015) (collecting cases).

In the complaint, and in Count IV in particular, Kapitus pleads little more than breach of contract. As set forth above, the allegations about the proximity of the signing of the loan documents and the initial defaults is enough—but, again, barely enough—to allow Count I to proceed as to false representations and fraudulent inducement. Both theories state claims for intentional torts, but neither, standing alone, is sufficient to state a claim for willful or malicious conduct. A false representation can be made without any intent to harm a lender; it can be made only with the intent to benefit the maker of the representation. *See Farm Credit Servs. of Am., PCA v. Woodrum (In re Woodrum),* 2025 WL 601718, at *17, *20 (Bankr. C.D. Ill. Feb. 24, 2025) (Where debtor made some payments and intended to use all loan proceeds in his farming operation, debt excepted from discharge under §523(a)(2)(B) due to fraudulent loan application but not under §523(a)(6) due to lack of proof of intent to injure lender.).

Count IV lacks any specific facts that would support finding willful and malicious conduct by the Debtor. To the contrary, several of the allegations plead only the conclusion that the Debtor's conduct was "willful and malicious." More than labels and conclusions are needed. *Twombly*, 550 U.S. at 555. Count IV will be dismissed.

## IV.    Conclusion

The Debtor's Motion to Dismiss will be granted, in part, and denied, in part, as to Count I and granted as to all of Counts II, III, and IV. The dismissals are without prejudice; Kapitus will be given leave to file an amended complaint. Although it seems unlikely that Kapitus can successfully plead plausible claims for all the causes of action it attempted to set forth in its original complaint, parties should be given at least one opportunity to replead. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 519 (7th Cir. 2015). In constructing its amended complaint, Kapitus must pay close attention to the required elements of each cause of action and determine if it can plead the facts necessary to support its claims. It cannot continue to plead mere labels and conclusions and to rely on "information and belief" allegations.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. See written Order. ENTERED: July 21, 2026

/s/ Mary P. Gorman

UNITED STATES BANKRUPTCY JUDGE

-23-